IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2012

**IRA MINNIFEE, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 97133     Bob R. McGee, Judge**

**No. E2012-00996-CCA-R3-PC - Filed March 27, 2013**

The Petitioner, Ira Minnifee, Jr., appeals the denial of post-conviction relief by the Criminal Court for Knox County. He originally entered guilty pleas to one count of possession of more than one gram of cocaine with the intent to sell within a thousand feet of a school and six counts of half a gram of cocaine or more within a thousand feet of a school, all Class A felonies.[1] Pursuant to the plea agreement, he received an effective sentence of twenty years. In this appeal, the Petitioner contends that he received ineffective assistance of counsel due to counsel's failure to adequately investigate his case. Consequently, the Petitioner claims he did not enter a knowing and voluntary guilty plea. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee for the Petitioner-Appellant, Ira Minnifee, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

At the plea submission hearing, the State presented the facts supporting the convictions:

---

[1] The record on appeal does not include any judgment, plea agreement, indictment or information. We glean this information from the prosecutor's comments during the guilty plea colloquy.

Your Honor, the proof would show in these cases[,] members of the organized crime unit with the Knoxville Police Department had been investigating Mr. Minnifee for some period of time prior to the months of September and October of 2009. And utilizing a confidential informant they were able to prepare a confidential informant to purchase cocaine from Mr. Minnifee at his residence, which was located within a thousand feet of real property of a public elementary school. The same being Dogwood Elementary School here in Knox County. And that residence was located at 912 Baker Avenue.

The confidential informant in each of the transactions involving sale of cocaine was prepared for an undercover purchase operation, given a recording device, given money of the police department to go to this residence where Mr. Minnifee was, and [on] each occasion the transaction was monitored audio and visually as well, and Mr. Minnifee in each of those occasions sold greater than half a gram of a substance containing cocaine to the confidential informant.

In each of those transactions the confidential informant was followed back to the agreed upon location, the drugs were retrieved, and he or she had no money after having been searched the second time.

As a result of those sales on October 14th, 2009, and as it relates to case 94327, the lead case, officers of the organized crime unit and the repeat offenders unit executed a search warrant of Mr. Minnifee's residence at 912 Baker Avenue here in Knox County. They found a substance weighing 2.7 grams that tested positive for cocaine in the field. And Mr. Minnifee also advised officers of additional cocaine present within his premises that weighed an additional 14.7 grams. He also had $590.00 in U.S. currency. And he was charged with possession for resale rising out of that transaction. And all of these events–all of these sales and all of these events took place here in Knox County.

The above offenses were committed on September 8, 10, 14, and 22 of 2009, and October 5, 12, and 14 of 2009.

During the guilty plea colloquy, the Petitioner acknowledged, among other things, that he understood the plea agreement as announced by the State and that he was entering the guilty pleas freely, voluntarily, and knowingly, because he was in fact guilty. In addition, the Petitioner said that he was satisfied with his attorney's services, that he did not have any questions for the Court about "anything at all," and that there was nothing he wanted to say

-2-

before the court pronounced judgment. He was sentenced to twenty years on each conviction, to be served concurrently, with release eligibility after serving fifteen years at one hundred percent. The mandatory $2,000.00 fine was imposed on each conviction. As part of the plea agreement, the State agreed to dismiss a separate, pending violation of probation warrant.

The Petitioner timely filed a pro se petition for post-conviction relief, and new counsel filed an amended petition.[2] The trial court held an evidentiary hearing on March 7, 2012, at which the State entered into evidence six toxicology reports from the Petitioner's drug transactions and the transcript of the guilty plea hearing. Each toxicology report was issued by the Tennessee Bureau of Investigation's Knoxville Crime Laboratory and dated October 1, 2009, October 14, 2009, and November 2, 2009. The reports confirmed that the "Rock-like substance[s]" consisted of 2.2 grams of cocaine, 2.4 grams of cocaine, 13.0 grams of cocaine, 0.4 gram of cocaine, 4.0 grams of cocaine base, 4.6 grams of cocaine base, 1.1 gram of cocaine base, and 1.4 gram of cocaine base.

The Petitioner testified that he hired trial counsel, made bond, and told counsel that the confiscated cocaine "wasn't real." Although the Petitioner acknowledged that counsel told him that the drugs had been sent to a laboratory to be tested, the Petitioner said he never saw any toxicology reports. Because the Petitioner never saw any lab report, his primary complaint was that counsel did not send the drugs to a lab to be tested. The Petitioner said that he would have proceeded to trial had counsel told him the lab showed the drugs tested positive for cocaine. He said counsel did not talk with him about independently testing the cocaine. The Petitioner said he purchased one-half ounce of fake cocaine for one hundred dollars but did not tell counsel how he acquired the cocaine because counsel "didn't never ask or no questions like that."

The Petitioner said counsel never talked with him about possible defenses but just said he would "try to fight [to] the . . . best of [his] ability." He said counsel never shared any discovery with him: "I didn't see no lab reports. I didn't see no video tapes. I didn't see no audios. I didn't see no pictures or no nothing. [Counsel] said I got to go to trial to see all that. But I thought I could see that without going to trial."

The Petitioner said he was arrested while he was released on bond, and counsel visited him twice while he was in custody. Counsel presented two offers from the State, the first of which the Petitioner rejected. The Petitioner accepted the second offer for twenty years and explained he "was like caught between a rock and a hard place," and he felt "like [he] was

_____

[2] An order appointing post-conviction counsel appears in the record, but at the evidentiary hearing, said counsel announced he had been retained, not appointed.

just rushed through the system. With no–I ain't had no kind of fight on my side or nothing like that." He recalled the court's asking him if he had any questions at the plea submission hearing, but he said he replied that he did not because he "didn't think it was going to help me none. My mind wasn't in the courtroom." He remembered the court's asking him if he was satisfied with his counsel and testified that he did not answer honestly because he "didn't think it was going to make a difference. . . . I'm in a lose-lose situation. . . . I ain't know what to do." The Petitioner said that he "just fe[lt] like if I had a decent trial–a lawyer to fight for me I probably would have had a better chance."

On cross-examination, the Petitioner acknowledged he had previously entered guilty pleas to simple possession, underage possession of beer, theft of property over $1,000.00, and attempted aggravated robbery. He admitted that he understood the plea process. He acknowledged counsel told him the State might allow his charges to be reduced if he would assist law enforcement, but he chose not to do so. He agreed counsel told him the court could order consecutive sentences and that he faced between fifteen and one hundred seventy years' imprisonment. He acknowledged counsel talked with him about all of his options. He agreed he decided to enter guilty pleas because he understood that if he went to trial, he could be sentenced to much more than twenty years.

The Petitioner acknowledged that counsel was able to talk to the witnesses and review the State's entire file on each of his cases. He agreed counsel saw the State's video tapes but denied counsel told him he saw the Petitioner on the tapes. Although the Petitioner agreed that counsel showed him some "papers," he insisted these documents did not confirm the drugs had been sent to the lab. When presented with the toxicology reports at the hearing, the Petitioner said he thought they were fake reports. He acknowledged that at the time he entered the pleas, he believed the cocaine was not real and did not tell the court because he "didn't think it was going to make a difference [.]" The Petitioner also complained that (1) his house was not within a thousand feet of a school, (2) the search warrant contained lies, and (3) trial counsel refused to challenge the evidence. On redirect examination, the Petitioner clarified that he thought the toxicology reports were wrong due to a chemist's or lab analyst's error.

Counsel testified that he had practiced law for twenty-five years and had previously represented the Petitioner. Counsel said he "really like[d]" the Petitioner. Counsel said

> An offer was made by the State for [the Petitioner] to work for the State to help himself out. . . . So we reset [a prior] case . . . . And so a lot of time went by when [the Petitioner] would have been out [of] custody. . . . Then . . . there was some talk about him not helping. He's not helped so far. He hadn't done anything.

-4-

Counsel explained that the Petitioner did not provide the State with any assistance, which prompted the State to execute a search warrant for the Petitioner's home. Following the search warrant, Counsel advised the Petitioner that his "best case scenario if you get convicted of all these offenses, [is] the judge gives you the minimum in the range and stacks just one, you're at thirty. And the offer now is twenty and you beat that by ten years. . . . And if you lose, you may never get out of the penitentiary."

Counsel inspected the State's file, and an undercover officer assisted him in viewing the videos. The Petitioner and his girlfriend, whom counsel also represented, waited for him outside the District Attorney's office, and counsel said he "came back out and told [the Petitioner] what [he] had just seen" in the State's files. Counsel said one video showed the Petitioner:

> walking down his driveway . . . and he walks up to a car, he hands the person something in the car. . . . [W]hat really caught my attention is that it turned out to be [a] female that was driving the vehicle which was parked. The female then holds up a baggy of, it looked like white substance, and said so this is what . . . . eight ball looks like. . . . And [the Petitioner] said be careful putting these – he looked both ways and said be careful. Put that stuff down. Somebody may see us.
>
> And so that really stuck in my mind, so I went to [the Petitioner] and I said . . . I've seen the video, one in particular, where [the] girl's holding up the bag. And then we just went on from there.

Counsel told the Petitioner, "that the tox[icology] reports show[ed] a cocaine base." Counsel said the Petitioner never told him that the Petitioner was selling fake cocaine or that the toxicology reports may not be correct. He also said the Petitioner never mentioned re-testing the drugs, but counsel would have remembered such a conversation because it required a discussion of fees. Counsel said he "marked . . . off" the distance between the Petitioner's property line and the school's property line and "[i]t was well within a thousand feet." On cross-examination, counsel testified that the Petitioner never requested a copy of the toxicology report or the video surveillance.

The post-conviction court recognized that the petition for post-conviction relief did not assert the Petitioner's belief that the cocaine was counterfeit but nevertheless allowed the Petitioner to present this issue at the evidentiary hearing. By written order, the post-conviction court determined that the Petitioner failed to show that trial counsel was deficient or that the Petitioner suffered any prejudice as a result of counsel's conduct. The Petitioner then filed a timely notice of appeal.

## ANALYSIS

On appeal, the Petitioner argues the post-conviction court erred in denying the petition, because trial counsel (1) "failed to investigate the possibility of a defense based on mistake of fact, and failed to advise the Petitioner of same," and (2) "failed to share the State's discovery with the Petitioner, thereby preventing the Petitioner from making a knowing and informed guilty plea." In response, the State contends that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

**Ineffective Assistance of Counsel**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2012). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.

The Petitioner specifically argues that he received ineffective assistance of counsel because (1) he told trial counsel that he sold a "fake" controlled substance and trial counsel failed to discuss a "mistake of fact" defense with him and (2) trial counsel failed to provide actual copies of the laboratory reports or the surveillance videos. The proof at the post-conviction hearing established that the drugs recovered from the multiple drug transactions with the Petitioner were sent to the TBI laboratory for analysis and tested positive for cocaine base. Counsel testified that he reviewed the toxicology reports from the TBI and discussed them with the Petitioner, and that the Petitioner never advised him that the Petitioner was

selling counterfeit drugs. Even though the Petitioner insisted that he told trial counsel that he was selling counterfeit drugs, the post-conviction court credited the testimony of trial counsel and the accuracy of the toxicology reports.

The Petitioner also argues that his guilty plea was not knowingly and voluntarily entered because trial counsel failed to provide copies of the laboratory reports or the surveillance videos.[3] Here, the post-conviction court determined that counsel discussed the video surveillance with the Petitioner and that the Petitioner's failure to request copies of the video surveillance or the toxicology reports was consistent with the "long relationship" trial counsel had with the Petitioner. Moreover, the court found counsel thoroughly investigated the case, adequately advised the Petitioner, and had numerous conversations with the Petitioner. The post-conviction court determined, and we agree, that the Petitioner failed to establish deficient performance or prejudice. Nothing in the record preponderates against the determination of the post-conviction court. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

---

[3] The only grounds alleged in his brief in support of this issue is that trial counsel failed to provide him with discovery. Based on this, the Petitioner claims he was "prevented . . . from making a knowing and informed decision to plead guilty."